UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | Cr. No. |
| : | |
| : | Violation: |
| : | 18 U.S.C. § 1341 (Mail Fraud) |
| v. : | 18 U.S.C. § 981(a)(1)(C) (as incorporated |
| : | by 28 U.S.C. § 2461(c)) |
| : | |
| **MICHAEL MAURICE CLARK,** : | |
| : | |
| Defendant. : | |
| : | |

## INFORMATION

The United States Attorney informs the Court that:

### INTRODUCTION

At all times material to this Information:

1. Defendant MICHAEL MAURICE CLARK (hereinafter "CLARK") lived in District Heights, Maryland. CLARK was a driver for a granite distributor in District Heights. In or around May 2006, CLARK met JACQUELINE C. WRIGHT (hereinafter "WRIGHT") at a nightclub.

2. WRIGHT lived in the District of Columbia and worked in the District of Columbia Office of Tax and Revenue (hereinafter "OTR"), which is part of the Office of the Chief Financial Officer. OTR administers and enforces the District's tax laws, collects revenues for the City, and records deeds and other written instruments affecting rights, titles, or interests in real or personal property.

3. CLARK and WRIGHT had a personal relationship.

4.  WRIGHT started working at OTR in or around 2001 in the customer service division. In or around 2007, she became an OTR revenue officer. As part of her current and former job duties, WRIGHT used a computer program, the Integrated Tax System (hereinafter "ITS"), to assist taxpayers in the tax refund process. OTR employees are assigned individual computer passwords that they must use to access computer work stations and, once on a workstation, the ITS program. WRIGHT's individualized log-in identification on ITS was ITS705.

5.  The District of Columbia imposes taxes on income earned by residents of the District of Columbia. Generally speaking, individuals who work in the District but live in Maryland pay Maryland income taxes, not District income taxes.

6.  Income tax return checks generated through ITS are mailed directly to the payee listed on the check.

## THE SCHEME

### COUNT ONE
### Mail Fraud

7.  Beginning in or around December 2006 and continuing thereafter, CLARK, having devised a scheme or artifice with WRIGHT to defraud the District of Columbia government, and to obtain money or property from the District of Columbia Government by means of false or fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting to do so, knowingly caused to be delivered by the Postal Service <u>six</u> fraudulent income tax return checks.

8. CLARK and WRIGHT hatched the scheme after sharing complaints about their respective jobs. They did not implement their scheme immediately because they were concerned about being apprehended.

9. On or about March 8, 2007, WRIGHT, using CLARK's actual social security number, created a profile for CLARK in ITS for the purpose of filing an income tax return, even though CLARK did not earn any income in the District of Columbia in tax year 2006.

10. As part of the scheme with WRIGHT to defraud the District of Columbia and obtain money or property by means of false or fraudulent pretenses, representations, or promises, on or about March 8, 2007, CLARK filed a District of Columbia income tax return for tax year 2006 claiming that (1) he had $57,555.00 in taxable income in the District, (2) $3,586.00 had been withheld from his income for District income taxes, and (3) given that he owed only $3,468.00 in taxes, he was due a refund of $310.00. This tax return used CLARK's correct social security number and mailing address. The bottom of the tax return states: "Under penalties of law, I declare that I have examined this return and, to the best of my knowledge, it is correct."

11. Even though CLARK was not entitled to any District of Columbia income tax return for tax year 2006, on or about March 8, 2007, WRIGHT used her access to ITS to increase CLARK's income tax return refund from $310.00 to $11,610.00. WRIGHT did this first by raising CLARK's purported earnings by $100,000, from $57,555.00 to $157.555.00. Next, WRIGHT raised CLARK's purported withholdings by $20,000, from $3,586.00 to $23,586.00. When WRIGHT made those two changes in ITS, her log-in number—ITS705—appeared in the record entry.

12. On or about March 10, 2007, the District of Columbia issued Check No. 1681362 on Bank of America Account No. 2547, a check in the amount of $11,610.00 made out to CLARK and that included his home address. That check was mailed from the District of Columbia to CLARK's home address in District Heights.

13. On or about March 15, 2007, CLARK deposited the fraudulently obtained $11,610.00 District of Columbia income tax return check into an account he controlled at Wachovia, Account No. 1801. The back of the check bears CLARK's signature.

14. On or about March 16, 2007, CLARK withdrew $5,850.00 from Account No. 1801—roughly half of the $11,610.00 check—and gave it to WRIGHT for her role in the scheme.

15. Having succeeded in obtaining one fraudulent income tax return, CLARK and WRIGHT decided to submit a second fraudulent income tax return. They began by creating on or about March 28, 2007, a second ITS profile for CLARK, one using a fraudulent social security number and omitting his middle initial. The second return, which was filed on the same day the new profile for CLARK was created, claimed that CLARK (1) had $257,389.00 in taxable income in the District for tax year 2006, (2) had $61,463.00 in taxes withheld from his income, (3) owed $21,271.00 in taxes, and (4) was due a refund of $40,192.00. This fraudulent return continued to use CLARK's real address. The bottom of the tax return states: "Under penalties of law, I declare that I have examined this return and, to the best of my knowledge, it is correct."

16. As a result of CLARK and WRIGHT's scheme, on or about March 31, 2007, the District of Columbia issued Check No. 1709342 on Bank of America Account No. 2547, a check in the amount of $40,192.00 made out to CLARK and that included his home address. That check was mailed from the District of Columbia to CLARK's home address in District Heights.

17.   On or about April 5, 2007, CLARK deposited the $40,192.00 District of Columbia income tax return check into Account No. 1801, an account he controlled at Wachovia. The back of the check bears CLARK's signature.

18.   On or about April 9, 2007, CLARK withdrew $6,350.00 and $15,000.00 from that account. He used $15,000.00 to purchase a cashier's check in that amount that lists WRIGHT as the payee.

19.   Also on or about April 9, 2007, WRIGHT deposited the $15,000.00 cashier's check she had obtained from CLARK for her role in the scheme into her account at Citibank, Account No. 4360.

20.   On or about April 24, 2007, WRIGHT used her knowledge of ITS to have the District issue a second income tax refund check for CLARK in the amount of $11,610.00 on the false ground that the first check had been lost and not cashed. In truth, WRIGHT knew the first fraudulently obtained check had been received and cashed by CLARK because WRIGHT had received half the proceeds of that check. When WRIGHT accessed ITS to cancel the first $11,610.00.00 check so a second check in that amount would be issued, her log-in number—ITS705—appeared in the record entry.

21.   On or about April 26, 2007, the District of Columbia issued Check No. 1742305 on Bank of America Account No. 2547, a check in the amount of $11,610.00 made out to CLARK and that included his home address. That check was mailed from the District of Columbia to CLARK's home address in District Heights.

22. WRIGHT had thus exploited a deficiency that allowed a check to be "reissued" even without any action being taken to cancel the first check or confirm that the first check had not already been negotiated.

23. On or about May 1, 2007, CLARK deposited the second fraudulently obtained $11,610.00 income tax refund check into an account he controlled at Citibank, Account No.7610. The back of the check bears CLARK's signature.

24. On or about May 2, 2007, CLARK withdrew $7,190.00 from his Citibank Account and gave all or part of that sum to WRIGHT.

25. Also on or about May 2, 2007, WRIGHT deposited $5,800.00—or roughly half of the $11,610.00 in proceeds from the fraudulently obtained income tax return check—into her Citibank account, Account No. 4360.

26. On or about May 16, 2007, WRIGHT again exploited ITS to cancel the first $40,192.00 check to CLARK even though that check had already been received and cashed by CLARK and even though WRIGHT had received half the proceeds of that fraudulently obtained check. When Wright accessed ITS to cancel the first $40,192.00 check so a second check in that amount would be issued, her log-in number—ITS705—appeared in the record entry.

27. As a result of WRIGHT's actions in ITS, on or about May 17, 2007, the District of Columbia issued a second check to CLARK—Check No. 1778123 on Account No. 2547—in the amount of $40,192.00. That check was mailed from the District of Columbia to CLARK's home in District Heights.

28.   On or about May 21, 2007, CLARK deposited the second $40,192.00 check into an account he controlled at Citibank, Account No. 7610. The back of the check bears CLARK's signature.

29.   Also on or about May 21, 2007, CLARK withdrew $20,000.00—or roughly half the proceeds from the fraudulently obtained income tax return check—and gave it to WRIGHT for her role in the scheme.

30.   Also on or about May 21, 2007, WRIGHT deposited the $20,000.00 in proceeds from her scheme into her account at Citibank, Account No. 4360.

31.   On or about June 7, 2007, WRIGHT again exploited ITS to cancel the $40,192.00 check to CLARK, causing the system to issue a third check in this amount to CLARK even though he had already negotiated two checks in that same amount. To disguise her actions, WRIGHT used the computer of one of the employees in her section to cancel the $40,192.00 check to CLARK. Thus, the log-in number of the other employee—ITS285—appeared in the record entry.

32.   As a result of WRIGHT's actions, on or about June 9, 2007, the District of Columbia issued to CLARK Check No. 1791461 on Bank of America Account No. 2547 in the amount of $40,192.00. That check was mailed from the District of Columbia to CLARK's home in District Heights.

33.   On or about June 14, 2007, CLARK deposited Check No. 1791461 into his account at Citibank, Account No. 7610. The back of the check bears CLARK's signature.

34.   On or about June 15, 2007, CLARK wrote a check to WRIGHT—Check No. 169 on his Citibank account—in the amount of $20,000.00 and gave it to WRIGHT for her role in the scheme.

35.  Also on or about June 15, 2007, WRIGHT deposited the $20,000.00 check from CLARK for her role in the scheme into her account at Citibank, Account No. 4360.

36.  On or about September 11, 2007, WRIGHT again exploited ITS to cancel the $40,192.00 check to CLARK, causing the system to issue a <u>fourth</u> check in this amount to CLARK. When Wright accessed ITS to cancel the $40,192.00 check so a fourth check in that amount would be issued, her log-in number—ITS705—appeared in the record entry.

37.  Thus, on or about September 13, 2007, the District of Columbia issued to CLARK Check No. 1825621 on Bank of America Account No. 2547 in the amount of $40,225.03. Remarkably, CLARK received $33.03 as interest for not timely receiving the $40,192.00 to which he was never entitled. That check was mailed from the District of Columbia to CLARK's home in District Heights.

38.  On or about September 19, 2007, CLARK deposited the $40,225.03 check into his account at Citibank, Account No. 7610. The back of the check bears CLARK's signature.

39.  On or about September 20, 2007, CLARK wrote a check to WRIGHT—Check No. 101 from his Citibank account—in the amount of $20,000.00 and gave it to WRIGHT for her role in the scheme.

40.  Also on or about September 20, 2007, WRIGHT deposited the $20,000.00 check from CLARK into her account at Citibank, Account No. 4360.

41.  CLARK and WRIGHT's mail fraud scheme thus procured the following income tax return checks from the District of Columbia:

| Date | Check No. | Amount |
|---|---|---|
| March 10, 2007 | 1681362 | $11,610.00 |
| March 31, 2007 | 1709342 | $40,192.00 |
| April 26, 2006 | 1742305 | $11,610.00 |
| May 17, 2007 | 1778123 | $40,192.00 |
| June 9, 2007 | 1791461 | $40,192.00 |
| September 13, 2007 | 1825621 | $40,225.03 |

42.     In sum, CLARK and WRIGHT used the mails to defraud the District of Columbia of $184,021.03.

43.     On or about November 27, 2007, WRIGHT accessed ITS and changed CLARK's Maryland mailing address to one in the District of Columbia. When WRIGHT made that change, her ITS log-in—ITS705—appeared in the record entry.

44.     On or about March 11, 2008, CLARK filed a fraudulent District of Columbia income tax return for tax year 2007. The return claimed that CLARK (1) had $257,389.00 in taxable income in the District for tax year 2007, (2) had $61,463.00 withheld from his income, (3) owed $20,678.00 in taxes, and (4) was due a refund of $40,785.00. CLARK used the same false social security number as on his second 2006 return. The 2007 return uses the District of Columbia mailing address entered into ITS by WRIGHT. The bottom of the return states: "Under penalties of law, I declare that I have examined this return and, to the best of my knowledge, it is correct."

45.     But for WRIGHT and CLARK's scheme being detected, the District of Columbia would have processed a seventh fraudulent income tax return involving the defendants.

46.  CLARK used approximately $80,000.00 of the proceeds of the scheme on home improvement projects.

47.  WRIGHT used approximately $20,000.00 to $30,000.00 of the proceeds on home improvement projects.

**(Mail Fraud, in violation of 18 U.S.C. § 1341)**

CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ONE

48.  Paragraphs 1-47 are re-alleged as though fully set forth herein for the purpose of alleging criminal forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c).

49.  As a result of the offense alleged in Count One of this Information, CLARK shall forfeit to the United States any and all property, real or personal, involved in the mail fraud scheme, or traceable to such property involved in the scheme, in violation of Title 18, United States Code, Section 1341, including but not limited to:

Money Judgment

50.  $184,021.03, which represents a sum of money equal to an amount of property involved in the mail fraud scheme, or traceable to property involved in the scheme, in violation of Title 18, United States Code, Section 1341. Fed. R. Crim. P. 32.2(b)(1).

51. By virtue of the commission of the felony offense charged in Count One of this Information, any and all interest that CLARK has in the property involved in, or traceable to property involved in, the mail fraud scheme is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c).

        JEFFREY A. TAYLOR
        UNITED STATES ATTORNEY
        D.C. Bar No. 498610

By: _____
        Timothy G. Lynch (D.C. Bar No. 456506)
        David S. Johnson (D.C. Bar No. 477298)
        Assistant United States Attorneys
        Fraud & Public Corruption Section
        555 Fourth Street, NW
        Washington, D.C. 20530
        (202) 353-4862
        timothy.lynch2@usdoj.gov